UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROCHELLE CRAIG,

              Plaintiff,

    -against-

SAXON MORTGAGE SERVICES, INC.;
DECISION ONE MORTGAGE COMPANY,
LLC; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS");
NS REALTY INVESTORS GROUP, LLC;
IRA BIERMAN, owner North Shore Investors
Realty Group and HDHJ Group LLC;
ANDREW RIEGER, Executive Accountant
for Kondaur Capital Corporation; KONDAUR
CAPITAL CORPORATION; HDHJ GROUP
LLC; and DOES 1 to 50 inclusive.

              Defendants.
------------------------------------------------------------X

**ORDER**
13-CV-4526 (SJF)(GRB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JAN 13 2015   ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On August 9, 2013, *pro se* plaintiff Rochelle Craig ("Craig" or "plaintiff")[1] initiated this action against certain of the defendants. [Docket Entry No. 1 ("Complaint" or "Compl.")]. On February 4, 2014, Craig filed an amended complaint to add all current defendants. [Docket Entry No. 28 ("Amended Complaint" or "Am. Compl.")][2]. Defendants Saxon Mortgage Services, Inc. ("Saxon"), Decision One Mortgage Company, LLC ("Decision One"), Mortgage Electronic Registration Systems, Inc. ("MERS"), NS Realty Investors Group, LLC ("NSRIG"),

---

[1] Certain of the mortgage documents and earlier proceedings refer to plaintiff by her maiden name, Rochelle McCary.

[2] Though titled the "Second Amended Verified Complaint," no amended complaint has preceded this amended complaint and therefore the Court will refer to this amended complaint as the "Amended Complaint" or "Am. Compl."

1

Ira Bierman ("Bierman"), Kondaur Capital Corporation ("Kondaur"), and HDHJ Group LLC ("HDHJ") have moved to dismiss the Amended Complaint pursuant to: (1) the *Rooker-Feldman* doctrine; (2) the doctrines of *res judicata* and/or collateral estoppel; (3) untimeliness; and (4) failure to state a claim upon which relief may be granted. [Docket Entry Nos. 52 ("Kondaur MTD"), 84-1 ("MERS MTD"), 85 ("Saxon MTD"), 92 ("NSRIG and HDHJ MTD"), 100 ("Bierman MTD"), and 102 ("Decision One MTD")]. Plaintiff opposed the motions to dismiss [Docket Entry Nos. 53 ("Opp. to Kondaur MTD"), 84-2 (Consolidated Omnibus Opposition to Kondaur MTD, Saxon MTD, NSRIG and HDHJ MTD, and MERS MTD ("Pl. Omnibus Opp.")), 101 ("Opp. to Bierman MTD"), and 106 ("Opp. to Decision One MTD")] and moved for default judgment as to defendant Andrew Rieger, who has not appeared in the action. [Docket Entry No. 97 ("Motion for Default Judgment")]. For the reasons set forth below, the Court dismisses the Motion for Default Judgment and the Amended Complaint in its entirety.

I. BACKGROUND[3]

    A. Factual Background

        1. Craig's Mortgage Loan

This action arises from a mortgage loan issued by defendant Decision One to Craig on

---

[3] Insofar as plaintiff urges the Court to convert defendants' motions to dismiss into motions for summary judgment because according to plaintiff "documents outside the Motions are asked to be used" (Pl. Omnibus Opp., at 19-20), the motion is denied. *See Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) ("[i]t is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records"). Moreover, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court...may refer to evidence outside the pleadings." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

2

August 31, 2005 for real property located at 76 Neptune Avenue, Brookhaven TWP, New York, 11950 (the "Property"). Am. Compl. ¶¶ 13-14, 31-32, Exs. A, B.[4] On August 31, 2005, Craig executed an Adjustable Rate Note in favor of Decision One in the original principal amount of two hundred twelve thousand eight hundred dollars ($212,800.00) (the "Note") and a certain mortgage (the "Mortgage") pursuant to which Craig granted a first mortgage lien upon the Property. *Id.*; [Docket Entry No. 86 (Declaration of Nora A. Valenza-Frost in Support of Saxon MTD ("Valenza-Frost Decl."), Ex. G, at 1]. MERS, as nominee for Decision One, assigned the Note and Mortgage to U.S. Bank, N.A., in its capacity as trustee for MLMI Surf Trust Services 2006-AB1 ("U.S. Bank") with an effective date of May 1, 2006. Am. Compl., Ex. E; Valenza-Frost Decl., Ex. G, at 1. On December 9, 2008, U.S. Bank assigned the Note and Mortgage to Saxon. *Id.* On April 7, 2010, Saxon assigned the Note and Mortgage to Kondaur, who assigned Note and Mortgage to North Shore Investors Realty Group on December 16, 2011. Valenza-Frost Decl., Ex. G, at 2; Am. Compl., Ex. E. North Shore Investors Realty Group subsequently assigned the Note and Mortgage to HDHJ, and HDHJ further assigned Note and Mortgage to NSRIG by Assignment of Mortgage effective January 20, 2012 and recorded on April 3, 2012. *Id.*[5]

---

[4] While the Amended Complaint references a second loan in the amount of $53,200, as plaintiff notes, the "Note for roughly $53,000…has been resolved" (Pl. Omnibus Opp., at 2), and the allegations in the instant action relate solely to the $212,800 loan. [Docket Entry No. 87 ("Mem. of Law in Support of Saxon MTD"), at 2 n.3].

[5] *See, e.g., Kondaur Capital Corp. v. McCary*, 115 A.D.3d 649, 650 (N.Y. App. Div. 2d Dep't 2014) (plaintiff in State Court Foreclosure Action submitted "the written mortgage assignments and the affidavit of the plaintiff's president, which established that it had physical possession of the note prior to the commencement of [the] action."); [Docket Entry No. 94 (Affirmation of Eric Wainer in Support of NSRIG and HDHJ MTD ("Wainer Aff.")), Ex. G, at 2 (NSRIG annexed to its motion for relief from the stay: (1) a copy of the original Note executed by Craig on August 31, 2005 and endorsed in blank; (2) a copy of the Mortgage in favor of Decision One; and (3) assignments from Decision One and subsequent parties in interest to NS Realty)].

2. New York State Foreclosure Proceeding Against Craig

Craig stopped making payments on her mortgage loan "on or about December 2005." Am. Comp. ¶ 44. On August 20, 2010, Kondaur initiated a foreclosure proceeding against Craig in New York State Supreme Court, Suffolk County (Index No. 298820/2010) (the "State Court Foreclosure Action"). Wainer Aff., Ex. A. In the State Court Foreclosure Action, Craig asserted as affirmative defenses many of the same claims she brings in the instant action: (1) that Kondaur lacked standing to bring the foreclosure action; (2) that there was no proper assignment of the Mortgage; (3) that Kondaur was not in possession of the Note; (4) and that plaintiffs violated New York State Banking Law and "engaged in predatory lending." Valenza-Frost Decl., Ex. H at 1-3. Craig also filed a cross-motion for summary judgment to dismiss the complaint in the State Court Foreclosure Action for, *inter alia*, lack of standing. *See Kondaur Capital Corp.*, 115 A.D.3d at 649.

On February 14, 2012, the New York State Supreme Court granted summary judgment to the plaintiff in the State Court Foreclosure Action, denied Craig's cross-motion for summary judgment, and referred the matter to a referee to compute. *See id.* at 650. On December 5, 2012, the New York State Supreme Court confirmed the referee's finding that three hundred sixty-six thousand four hundred six dollars and seventy-nine cents ($366,406.79) was due upon the Mortgage, and entered a judgment of foreclosure and sale against Craig (the "Judgment of Foreclosure and Sale"). Wainer Aff., Ex. B. On August 13, 2013, the foreclosure sale of the Property was held and NSRIG became the owner of the Property. Wainer Aff. ¶ 10. On March 5, 2014, the New York State Supreme Court Appellate Division Second Department affirmed the Judgment of Foreclosure and Sale. *Kondaur Capital Corp*, 115 A.D.3d at 650.[6]

---

[6] The New York State Appellate Division upheld the New York State Supreme Court's finding that plaintiff "had established its prima facie entitlement to judgment as a matter of law by producing the

4

3. Craig's Chapter 7 Petition in Bankruptcy Court

On January 22, 2013, Craig filed a chapter 7 petition in the U.S. Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") to obtain a stay of the foreclosure sale (Case No. 13-70307-AST). Am. Compl. ¶ 79, Ex. O. On March 25, 2013, NSRIG filed a motion for relief from the stay, seeking to enforce the Judgment of Foreclosure and Sale. Wainer Aff., Ex. G, at 2. On May 22, 2013, the Bankruptcy Court lifted the automatic stay to allow NSRIG to "exercise all its rights and remedies under its loan documents, including, without limitation, the completion of the mortgage foreclosure action pending in New York State Court." Wainer Aff., Ex. E, at 1.

On April 23, 2013, Craig instituted an adversary proceeding against NSRIG and Bierman (the "Adversary Proceeding"), alleging that "NS Realty lack[ed] standing as a creditor because '[t]here [was] no evidence of a promissory note from the real party in interest endorsed to the Defendant attached to the foreclosure complaint with regard to the mortgage," and that NS Realty "[was] committing an act of fraud upon [Craig], The Supreme Court of The State of New York, Suffolk County, and [the Bankruptcy Court]...by representing that the real property in question [was] subject to a lien held by [NSRIG]." Wainer Aff., Ex. G, at 3 (citing Adversary Proceeding Complaint ¶¶ 20-27).

On August 13, 2013, the Bankruptcy Court dismissed the Adversary Proceeding, stating "it was undisputed that NS Really actually [held] the Note, endorsed in blank, and that it had possession of the Note at the time it sought stay relief from [the Bankruptcy] Court" and that "[u]pon obtaining physical possession of the Note, NS Realty acquired rights incident thereto,

---

mortgage, the unpaid note, and evidence of default" and had "also established that it had standing as the holder of the note and mortgage by submitting the written mortgage assignments and the affidavit of the plaintiff's president, which established that it had physical possession of the note prior to commencement of [the] action." *Kondaur Capital Corp*, 115 A.D.3d at 650.

including the right to payment of the debt for which the Debtor was obligated and the right to enforce the Mortgage lien against the Property because the mortgage follows the note." Wainer Aff., Ex. G, at 11 (citations omitted).[7] The Bankruptcy Court declined to exercise jurisdiction over any claims regarding NSRIG's standing to seek or enforce the Judgment of Foreclosure and Sale pursuant to the *Rooker-Feldman* doctrine (*id.* at 8), and dismissed Craig's claim of fraud. *Id.* at 12.

B. Procedural Background

Plaintiff initiated this action on August 9, 2013 and filed the Amended Complaint on February 4, 2014. *See* Compl.; Am. Compl. The Amended Complaint alleges that "any attempt to foreclose is fraudulent" (Am. Compl. ¶ 143) because defendants are "not the holders-in-due-course of the Note" because "[o]n information and belief...Decision One sold the Notes on Wall Street" (*id.* ¶ 35) and "the Note...for the sum of $212,800.00 is believed sold to Wells Fargo Bank." *Id.* In support of this allegation, plaintiff points to a document attached to the Amended Complaint which lists "Wells Fargo Bank, N.A., d/b/a America's Servicing Company" as the servicer of her loan. *See id.*, Ex. D.

The Amended Complaint asserts twelve (12) causes of action generally against all defendants, which can be divided into two categories: (1) claims challenging the Judgment of Foreclosure and Sale, defendants' standing to commence the State Court Foreclosure Action, and/or the validity of the mortgage documents that formed the basis for the Judgment of

---

[7] In the Adversary Proceeding, as in this case, Craig argued that "NS Realty [had] failed to produce the Note" (Wainer Aff., Ex. G, at 10), prompting the Bankruptcy Court to remark that "copies of the Note, Mortgage and Mortgage assignments have been filed with this Court, and served upon Debtor, at least twice." *Id.* Moreover, as the Bankruptcy Court noted, NSRIG annexed to its motion for relief from the stay: (1) a copy of the original Note executed by Craig on August 31, 2005 and endorsed in blank; (2) a copy of the Mortgage in favor of Decision One; and (3) assignments from Decision One and subsequent parties in interest to NS Realty. Wainer Aff., Ex. G, at 2.

Foreclosure and Sale (the "Foreclosure Related Claims") (*see* Am. Compl. ¶¶ 92-96, 108-164), and (2) claims alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, some of which are related to the State Court Foreclosure Action and some of which may be independent of the State Court Foreclosure Action (the "Federal Law Claims") (*see* Am. Compl. ¶¶ 97-107).

The Amended Complaint seeks: (i) to enjoin defendants from proceeding to foreclose upon the Property (*see* Am. Compl., Prayer ¶¶ 1-3); (ii) a declaration that the foreclosure instruments and the security interests on the Property are "void" and an order striking those documents from any public record and directing defendants to deliver to plaintiff the note and deed of trust and to release the Property from any lien and encumbrance (*id.* ¶¶ 4-6, 8, 10); (iii) an order quieting plaintiff's title and terminating any security interest on the Property (*id.* ¶ 7); (iv) an order requiring defendant Bierman, "as an officer of the court, to uphold his ethical and professional canons...and present the evidence of lawful holder-in-due-course on the Note and chain of endorsement" (*id.* ¶ 9); and (v) an accounting of the loan, including payments and an auditing regarding the Note sale. *Id.* ¶ 11. Plaintiff seeks unspecified damages including actual damages "according to proof" (*id.* ¶ 12); compensatory, consequential, statutory, and punitive damages as permitted by law (*id.* ¶¶ 12-16); reasonable attorney's fees and costs (*id.* ¶ 18); and "such other relief as is just and proper." *Id.* ¶ 19.

II. DISCUSSION

A. Standard of Review

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion

7

first." *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011); *see Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir.1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined" (internal citations omitted)). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1). "It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press…Objections to subject matter jurisdiction…may be raised at any time."). Accordingly, "before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (citations omitted). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *See Makarova*, 201 F.3d at 113. A

plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Id.*

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868.

Moreover, in deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868; *see also Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, 173 L.Ed.2d 868; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)).

The Court is mindful that a *pro se* plaintiff's submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Submissions by pro se plaintiffs are to be construed liberally and "interpret[ed]…to raise the strongest arguments that they suggest." *Scott v. Rock*, No. 10-civ-5989, 2013 WL 360398, at *3 (E.D.N.Y. Jan. 30, 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

    B.    The *Rooker-Feldman* Doctrine Divests This Court of Subject Matter Jurisdiction Over the Foreclosure Related Claims

A federal district court does not have subject matter jurisdiction "over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). "The doctrine applies when a litigant seeks to reverse or modify a state

court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." *Park v. City of N.Y.*, No. 99–civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

For the application of the *Rooker–Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Murphy v. Riso*, No. 11-civ-0873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (citing *Hoblock*, 422 F.3d at 85). The Second Circuit has classified the first and the fourth requirements as "procedural" and the second and third requirements as "substantive." *Hoblock*, 422 F.3d at 85.

1. Procedural Requirements

In this case, the procedural requirements are satisfied: Craig lost in state court when the Judgment of Foreclosure and Sale was entered against her on December 5, 2012, before Craig filed the instant action on August 9, 2013. *See* Wainer Aff., Ex. B.

2. Substantive Requirements

The second requirement for application of the *Rooker-Feldman* doctrine is satisfied because Craig's Foreclosure Related Claims complain of injuries, including "unlawful foreclosure" (Am. Compl. ¶ 155) and "great and irreparable injury in that Plaintiff will have no

right to redeem the Property" (*id.* ¶ 162), which arise from the state court Judgment of Foreclosure and Sale, and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgment. *See Trakansook v. Astoria Fed. Sav. & Loan Ass'n*, No. 06-civ-1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), *aff'd*, No. 07-2224-CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (finding plaintiff's claim that "she was injured when her house was taken from her without just compensation" was "caused by the state court judgment [of foreclosure]"); *Anctil v. Ally Fin., Inc.*, 998 F. Supp. 2d 127, 132-34 (S.D.N.Y. 2014) (holding *Rooker-Feldman* barred plaintiff's claims, which, *inter alia*, asserted that transfers of mortgages were illegal, chains of title to mortgages were broken, and the foreclosing entities initiated the foreclosure proceedings using false and misleading documents and did not hold valid title to the mortgages, thus rendering the foreclosures invalid, even where "[d]efendants' allegedly fraudulent *conduct* may have preceded the entry of the foreclosure judgments, but the *injury* complained of—loss of Plaintiffs' homes—was effected by the judgments, not by any previous direct actions taken by Defendants" (emphasis in original)).

The third requirement for application of the *Rooker-Feldman* doctrine is met because adjudication of Craig's claims would require this Court to review and reject both the New York State Supreme Court's Judgment of Foreclosure and Sale, and the New York State Appellate Division's affirmance of the Judgment of Foreclosure and Sale. The Amended Complaint seeks review and rejection of the holdings of both the trial and appellate courts. *See Trakansook*, 2007 WL 1160433, at *5 (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."). "Although plaintiff has made a cursory reference to monetary damages [*see* Am. Compl., Prayer ¶¶ 12-16]…it is abundantly clear that

the whole purpose of [the Foreclosure Related Claims] is to undo the foreclosure judgment. Therefore, *Rooker–Feldman* clearly applies." *Done v. Option One Mortgage*, No. 09-civ-4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011).

Craig concedes that her claims regarding defendants' authority to foreclose have been raised and rejected by the state court. *See* Pl. Omnibus Opp., at 9. Thus, all four elements of the *Rooker-Feldman* doctrine are met.

### 3. Fraudulent Procurement Exception Does Not Apply

In opposing defendants' motions to dismiss, plaintiff relies upon the "fraud exception" to the *Rooker-Feldman* doctrine articulated in *Goddard v. Citibank, NA*, No. 04-civ-5317, 2006 WL 842925 (E.D.N.Y. Mar. 27, 2006) to argue that her claims are not barred by the *Rooker-Feldman* doctrine. According to plaintiff, "[d]efendants fraudulently misled the State claiming they held the Note by assignment from MERS" and thus Plaintiff's claims for damages "are of the type held by the Court in *Exxon Mobil* to be independent from the state court judgment, because they allege fraud in the procurement of the judgment." Pl. Omnibus Opp., at 11 (citing *Goddard*, 2006 WL 842925, at *6).

Assuming, *arguendo*, that such an exception does exist,[8] it is inapplicable here because Craig's Foreclosure Related Claims relate not to defendants' conduct in the course of the State Court Foreclosure Action, but rather to the validity of the underlying mortgage documents and

---

[8] "The Courts of Appeals are currently divided on the question of whether a fraudulent procurement exception to *Rooker–Feldman* exists…The question is still technically an open one in the Second Circuit." *Anctil*, 998 F. Supp. 2d at 137. "While the Second Circuit has not explicitly ruled on the issue, it has indicated that it would be unwilling to recognize a fraud exception to *Rooker–Feldman*." *Roberts v. Perez*, No. 13-civ-5612, 2014 WL 3883418, at *4 (S.D.N.Y. Aug. 7, 2014); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002); *Castiglione v. Papa*, 423 F. App'x 10 (2d Cir. 2011) (summary order) (affirming the application of *Rooker–Feldman* to an attempt to collaterally attack an allegedly fraudulently obtained state-court judgment).

defendants' standing to commence the foreclosure proceeding, and thus "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgages were valid." *Webster v. Wells Fargo Bank, N.A.*, No. 08-civ-10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), *aff'd sub nom. as amended* (Jan. 24, 2012) *Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker–Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); *see also Feliciano v. U.S. Bank Nat. Ass'n*, No. 13-civ-5555, 2014 WL 2945798, at *2-4 & n.7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed "as a matter of law in light of the doctrines of *res judicata* and *Rooker-Feldman*" and that any attempt to invoke a fraud exception to *Rooker-Feldman*, "even assuming such an exception exists…fails because [plaintiffs] do not allege fraud in the procurement of the judgment and not just that the state court issue an incorrect opinion. Rather, the complaint alleges fraudulent conduct (generally) by defendant *prior* to the institution of the Foreclosure Action rather than *on the state court itself*." (internal citations and quotations omitted)). Therefore, Craig's attempt to invoke a fraudulent procurement exception to the *Rooker-Feldman* doctrine fails.

  C. To the Extent Plaintiff's Federal Law Claims are Not Barred by *Rooker-Feldman*, They are Untimely or Fail to State a Claim

    1. FDCPA Claims

To the extent plaintiff's FDCPA claims are attempts to challenge the state court's Judgment of Foreclosure and Sale, the validity of the mortgage documents underlying the

14

Judgment of Foreclosure and Sale, and/or defendants' standing to commence the State Court Foreclosure Action (*see* Am. Compl. ¶ 101 (asserting that defendants violated Section 1692e of the FDCPA by attempting "to collect a debt they possessed no authority to collect" and violated Section 1692f(6)(A) of the FDCPA by "initiating foreclosures without having lawful authority nor lawful possession of the Note")), they are also barred by the *Rooker-Feldman* doctrine for the reasons cited *supra* in Section II.B. *See Quiroz v. U.S. Bank Nat. Ass'n*, No. 10-civ-2485, 2011 WL 3471497, at *4 (E.D.N.Y. Aug. 5, 2011) (holding that "any FDCPA claim based on the falsity of the debt is barred by *Rooker-Feldman* because it would be inextricably intertwined with [the state court's order of foreclosure and sale]"); *Gray v. Americredit Fin. Servs., Inc.*, No. 07-civ-4039, 2009 WL 1787710, at *4 (S.D.N.Y. June 23, 2009) (holding that plaintiff's FDCPA claims that defendants "[did] not have standing to sue" plaintiff in state court were barred by the *Rooker-Feldman* doctrine).

To the extent plaintiff's FDCPA claims allege violations independent of the proceedings in the State Court Foreclosure Action, they are time-barred by the FDCPA's one (1) year statute of limitations. 15 U.S.C. § 1692k(d). Plaintiff's first FDCPA claim that "defendants violated the FDCPA by initiating foreclosures without having lawful authority" (Am. Compl. ¶ 101) is untimely because plaintiff filed the instant action on August 9, 2013, more than three years from the date of alleged violation: the initiation of the State Court Foreclosure Action on August 20, 2010. *See DeJesus v. BAC Home Loans Servicing, LP*, No. 13-civ-2864, 2014 WL 4804999, at *3-5 (E.D.N.Y. Sept. 26, 2014) (holding that plaintiff's claims that [defendants] violated the FDCPA "by initiating foreclosure proceedings that [defendant] did not have authority to pursue" were untimely because they "accrued at the time the Foreclosure Action was filed" more than two years before the complaint was filed). Plaintiff's second FDCPA claim that defendants

15

"made false representations in attempt to collect a debt they possessed no authority to collect in violation of § 1692e" (Am. Compl. ¶ 101) is also untimely because the last alleged violation of Section 1692e occurred "around April or May 2012" (Pl. Opp. to Kondaur MTD, at 11),[9] more than one year prior to plaintiff's initiation of the current action on August 9, 2013.

Insofar as plaintiff claims that defendants violated Section 1692g(a) of the FDCPA, plaintiff has failed to plead *any* facts related to Section 1692g(a), which requires debt collectors to, within five days after the initial communication with the debtor, provide notice regarding the amount and type of debt and the debtor's right to dispute the debt, only stating in a conclusory manner that defendants "failed to give Plaintiff the required Notices and authority (lawful possession of the Note by chain of endorsement) in connection with attempting to collect a debt or seize Subject Property in violation of § 1692g(a)." Am. Compl. ¶ 101. This bare allegation fails to allege which of the many communications alleged in the Amended Complaint is the "initial communication" for purposes of Section 1692g(a), or which defendant or defendants purportedly violated this section. Plaintiff has failed to state sufficient factual allegations with respect to her Section 1692g(a) claim to "nudge [her] claims...across the line from conceivable to plausible" (*Twombly*, at 570, 127 S.Ct. 1955), and therefore this claim is dismissed for failure to state a claim. *See Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240-41 (10th Cir. 2013) (affirming dismissal of plaintiff's § 1692g claim which merely alleged that defendants never "gave any of the required notices" but pleaded no other facts in relation to that claim).

---

[9] The Amended Complaint alleges that "defendants and each of them, have made false representations...in violation of § 1629e" (Am. Compl. ¶ 101) but fails to specify any specific misrepresentation made by any specific defendant that was in violation of Section 1629e. Plaintiff's opposition to the Kondaur MTD references allegations in the Amended Complaint which plaintiff asserts constitute violations of Section 1692e, the last of which occurred in May 2012. *See* Pl. Opp. to Kondaur MTD, at 11-12 (citing Am. Compl. ¶¶ 31-34, 54-56, 59-65, 70-71, 73-79, 83).

2. TILA Claims

Construing the Amended Complaint liberally, plaintiff alleges that defendants violated TILA by: (1) offering the loan at a "high rate" allegedly "in favor of Decision One" (Am. Compl. ¶ 44); and (2) failing to provide plaintiff with notice of any assignment of her mortgage. *Id.* ¶ 68 (under TILA "any assignment requires Notice to the plaintiff and none of these parties have ever forwarded any such Notice of any assignment"). Plaintiff's purported TILA claims are both barred by TILA's one (1) year statute of limitations for private actions for damages. *See* 15 U.S.C. § 1640(e) ("any action under this section may be brought...within one year from the date of the occurrence of the violation"). Plaintiff's first TILA claim regarding the issuance of the loan accrued when plaintiff executed the Note and Mortgage on August 31, 2005 (*see Escano v. Freemont Inv. & Loan*, No. 13-civ-1575, 2013 WL 6388448, at *2 (S.D.N.Y. Dec. 6, 2013) ("Plaintiffs' TILA claims accrued when Plaintiffs closed on the mortgages")), and her second TILA claim alleges a violation that would have accrued, at the latest, on May 3, 2012, thirty (30) days after the last assignment of her Mortgage was recorded on April 3, 2012 (*see* 15 U.S.C. § 1641(g)(1) ("not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer..."); *Feliciano*, 2014 WL 2945798, at *5 (holding that plaintiff's claim under 15 U.S.C. § 1641(g) was untimely because it "would have occurred 30 days after February 13, 2009, the date on which plaintiffs' mortgage and note was assigned")). Because the latest plaintiff's TILA claims could have accrued is May 3, 2012, more than one year prior to the commencement on the instant action on August 9, 2013, her TILA claims are dismissed as untimely.[10]

---

[10] To the extent that plaintiff's TILA claims request rescission of her mortgage loan, such claims expired in 2008, three years after the loan transaction was consummated in 2005, and therefore are also

17

3. Continuing Violation Theory Does Not Apply to Toll the Statute of Limitations

In opposition, plaintiff argues that her Federal Law Claims should not be dismissed as untimely because defendants, by "continuing to reassign unlawful acts, without correcting the wrongs from the first instances...acted to bring the acts into the limitations period." Pl. Omnibus Opp., at 12-13. Plaintiff's argument that defendants' alleged misconduct is "a continuing violation" and that "the continued harm by illegal foreclosure by parties lacking lawful authority, extends the liability and statute of limitations" (*id.*, at 13 n.4), is unavailing as to both her FDCPA and her TILA claims. "Although a few district courts within the Second Circuit have discussed the possibility of a continuing violation theory under the FDCPA, none have found the doctrine applicable." *Egbarin v. Lewis, Lewis & Ferraro LLC*, No. 3:00-civ-1043, 2006 WL 236846, at *10 (D. Conn. Jan. 31, 2006); *see also DeJesus*, 2014 WL 4804999, at *3-4 (finding that "[t]he established law in this Circuit [did] not support" plaintiff's argument "that the fact that the Foreclosure Action [was] still ongoing require[d] a finding that their claims were timely"). Plaintiff's FDCPA violations accrued no later than May 2012, more than one year before plaintiff commenced the instant action on August 9, 2013, and "all facts alleged in the complaint and those evident from Plaintiff's own documents indicate her awareness of problems concerning her loan well over one year prior to the commencement of this action." *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) (granting defendants'

---

untimely. 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first"); *see also Parejas v. Gen. Elec. Capital Servs., Inc.*, No. 10-civ-3348, 2011 WL 2635778, at *2 n.5 (E.D.N.Y. July 5, 2011) ("To the extent plaintiff also seeks rescission of the loans due to alleged violations of TILA, the statute of limitations for rescission is three years. As discussed above, this action was commenced more than three years after the loans originated. Thus, a rescission claim is also barred as a matter of law.").

18

motion to dismiss because FDCPA claims were time-barred). Plaintiff's argument that her TILA claims are timely pursuant to the continuing violation theory also fails because "the alleged continuing failure to provide TILA disclosures is not 'a continuing violation' for purposes of the one-year statute of limitations." *Van Pier v. Long Island Sav. Bank*, 20 F. Supp. 2d 535, 538-39 (S.D.N.Y. 1998).

III. CONCLUSION

For the foregoing reasons, the Court concludes that the *Rooker-Feldman* doctrine divests it of subject-matter jurisdiction over plaintiff's Foreclosure Related Claims and that plaintiff's Federal Law Claims, to the extent they allege violations independent of the Judgment of Foreclosure and Sale, are time barred and/or fail to state a claim. The Amended Complaint is dismissed in its entirety with prejudice and plaintiff's motion for default judgment as to defendant Rieger is dismissed as moot. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: January 13, 2015
Central Islip, New York